1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

YAKY HOWARD MEJIA SOTO,                          Case No. 2:25-cv-02281-RFB-EJY

8

Petitioner,                          **ORDER**

9

v.

10
11

REGGIE RADAR, *et al*.,

12

Respondents.

13
14

**I.    INTRODUCTION**

15

This case is one of a rapidly growing number before this Court challenging the federal

16

government's reading of the Immigration and Nationality Act (INA) to authorize mandatory

17

detention of all noncitizens charged with entering the United States without inspection.[1] The

18

_____

19

[1] This Court has already granted petitioners relief—both preliminary and on the merits—
in forty-two similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-
20    EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-
RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-
21    RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-
RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-
22    RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-
BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-
23    01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA,
2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-
24    EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-
RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025
25    WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-
NJK (D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025
26    WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC,
2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-cv-02139-RFB-
27
28

executive branch now takes the position that the INA, specifically 8 U.S.C. § 1225(b)(2)(A),

requires the detention of all undocumented individuals during the pendency of their removal

proceedings, which can take months or years. According to this interpretation, detention without

a hearing is mandatary, no matter how long a noncitizen has resided in the country, and without

any due process to ensure the government has a legitimate, individualized interest in detaining

them.

According to a leaked internal memo, the Department of Homeland Security (DHS), in

conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide

basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention

BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-cv-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025); Garcia-Arauz v. Noem, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); Silva Hernandez v. Noem, No. 2:25-cv-02304-RFB-EJY, 2025 WL 3470903 (D. Nev. Dec. 3, 2025); Reyes Cristobal v. Bernacke, No. 2:25-cv-02231-RFB-EJY, 2025 WL 3485770 (D. Nev. Dec. 4, 2025); Carrillo Fernandez v. Knight, No. 2:25-cv-02221-RFB-BNW, 2025 WL 3485800 (D. Nev. Dec. 4, 2025); Pilar Torres v. Bernacke, No. 2:25-cv-02270-RFB-EJY, 2025 WL 3514615 (D. Nev. Dec. 8, 2025); Nolasco-Gomez v. Noem, No. 2:25-cv-02217-RFB-DJA, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Ramirez-Contreras v. Noem, No. 2:25-cv-02218-RFB-EJY, 2025 WL 3514681 (D. Nev. Dec. 8, 2025); Rodas v. Noem, No. 2:25-cv-02216-RFB-BNW, 2025 WL 3514680 (D. Nev. Dec. 8, 2025); Perdomo-Gonzalez v. Noem, No. 2:25-cv-02121-RFB-EJY, 2025 WL 3514758 (D. Nev. Dec. 8, 2025); Hernandez Isidoro v. Bernacke, No. 2:25-cv-02312-RFB-NJK (D. Nev. Dec. 8, 2025); Serrano Gonzalez v. Knight, No. 2:25-cv-02081-RFB-BNW (D. Nev. Dec. 9, 2025); Morales Rondon v. Bernacke, No. 2:25-cv-01979-RFB-BNW (D. Nev. Dec. 9, 2025); Marquez v. Knight, No. 2:25-cv-02203-RFB-NJK (D. Nev. Dec. 9, 2025); Flores-Garcia v. Bernacke, No. 3:25-cv-00688-RFB-CSD (D. Nev. Dec. 9, 2025); Serrano Gonzalez v. Knight, No. 2:25-cv-02081-RFB-BNW, 2025 WL 3524774 (D. Nev. Dec. 9, 2025); Morales Rondon v. Bernacke, No. 2:25-cv-01979-RFB-BNW, 2025 WL 3527246 (D. Nev. Dec. 9, 2025); Marquez v. Knight, No. 2:25-cv-02203-RFB-NJK, 2025 WL 3527244 (D. Nev. Dec. 9, 2025); Flores-Garcia v. Bernacke, No. 3:25-cv-00688-RFB-CSD, 2025 WL 3527247 (D. Nev. Dec. 9, 2025); Garcia Soto v. Knight, No. 2:25-cv-02138-RFB-BNW (D. Nev. Dec. 10, 2025); Quinonez Orosco v. Lyons, No. 2:25-cv-02240-RFB-EJY (D. Nev. Dec. 10, 2025); Salguero v. DHS, No. 2:25-cv-02328-RFB-NJK (D. Nev. Dec. 10, 2025); Gallegos Rangel v. Knight, No. 2:25-cv-02161 (D. Nev. Dec. 10, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

1    without the opportunity for release on bond, in contravention of decades of agency practice and

2    robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On

3    September 5, 2025, the Bureau of Immigration Appeals (BIA) issued a precedential decision

4    adopting this new interpretation of the government's detention authority under the INA. See Matter

5    of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges

6    no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S.

7    who entered without inspection. Id.

8          The overwhelming majority of district courts across the country, including this Court, that

9    have considered the government's new statutory interpretation have found it incorrect and

10   unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D.

11   Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when

12   interpreted according to fundamental canons of statutory construction," as well as the legislative

13   history and decades of consistent agency practice establish "that the government's new

14   interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also Barco Mercado v.

15   Francis, No. 1:25-CV-06852, at *9-10 (S.D.N.Y. Nov. 26, 2025) (collecting over 350 decisions by

16   over 160 different district judges finding the application of §1225(b)(2)(A) to noncitizens residing

17   in the United States unlawful). A nationwide class has also been certified, and declaratory relief

18   granted to all class members holding that they are being detained without a bond hearing

19   unlawfully. See Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D.

20   Cal. Nov. 20, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403

21   (C.D. Cal. Nov. 25, 2025).

22         Petitioner is currently detained without the opportunity for release on bond in the custody

23   of Federal Respondents at Henderson Detention Center, pursuant to this new detention "policy."

24   He asserts the application of § 1225(b)(2) to him is unlawful under the INA, and his continued

25   detention violates the Due Process Clause of the Fifth Amendment. He seeks a writ of habeas

26

27         [3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of
     immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT),
28   https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850,
     https://perma.cc/L686-E97L.

1    corpus requiring that he be released unless Respondents provide him with a bond hearing under §

2    1226(a) within seven days of the Court's Order. For the reasons set forth below, the Petition is

3    granted and the Court orders Respondents to provide Petitioner a constitutionally adequate bond

4    hearing by **December 16, 2025,** or release him.

5

6    **II.    PROCEDURAL HISTORY**

7    On November 18, 2025, Petitioner filed his Petition for a Writ of Habeas Corpus. ECF No.

8    1. On November 21, 2025, this case was transferred to the undersigned judge as related to three

9    pending putative class actions pending before the Court. ECF No. 3. That same day, the Court

10    ordered Respondents to show cause by November 25, 2025, why the Court should not grant the

11    Petition. ECF No. 4.

12    On November 25, 2025, Respondents' counsel filed a notice of appearance and motion to

13    extend time to file a response to Order to Show Cause, seeking <u>eight additional days</u> to respond

14    and citing administrative burdens, such as personnel being on leave and necessary document

15    gathering, as grounds for good cause. ECF No. 6. Respondents noted in their filing that Petitioner's

16    counsel opposed any extension greater than 48 hours. <u>Id.</u> at 2. Over two weeks have passed since

17    this filing, yet Respondents have still failed to respond.

18    On December 4, 2025, Petitioner filed a Motion for Summary Judgment on the basis that

19    Respondents' failure to timely respond to even their own deadlines entitles Petitioner to relief.

20    ECF No. 10.

21    The Court's Order follows.

22

23    **III.    BACKGROUND**

24    **A.  Legal Background**

25    The Court fully incorporates by reference the legal background regarding the government's

26    detention authority and removal proceedings under the INA, as well as the government's new

27    statutory reading and mass detention "policy," set forth in its ruling in <u>Escobar Salgado</u>, 2025 WL

28    3205356, at *2-6 (D. Nev. Nov. 17, 2025).

**B. Petitioner Mejia Soto**

The Court makes the following findings as to Petitioner. Mr. Mejia Soto is a native and citizen of Honduras who has resided continuously in the United States since 1993, when he entered without inspection. ECF No. 1 at 4. Petitioner has resided in Las Vegas ever since and maintains a shared household with his fiancée and their three U.S. citizen children. Id.

Petitioner has been detained by Respondents at Henderson Detention Center since October 17, 2025, when he arrived for his scheduled biometrics appointment and was arrested by ICE. Id. On November 17, 2025, an Immigration Judge of the Las Vegas Immigration Court denied Petitioner bond due to lack of jurisdiction under Hurtado, without conducting an individualized assessment. Id.

**IV. LEGAL STANDARDS**

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003); Trump v. J. G. G., 604 U.S. 670, 672 (2025) (describing immigration detainees' challenge to their confinement and removal as falling "within the 'core' of the writ of habeas corpus.") (*per curiam*) (citations omitted). "The application for the

1    writ usurps the attention and displaces the calendar of the judge or justice who entertains it and

2    receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208

3    F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

4

5    **V.    DISCUSSION**

6          As an initial matter, the Court first addresses Respondents' failure to respond to the

7    Petition. This Court ordered Respondents to show cause why this Petition should not be granted

8    by November 25, 2025, in accordance with 28 U.S.C. § 2243. ECF No. 4. On November 25, 2025,

9    Respondents filed a Motion to Extend Time to File a Response to the show cause order, requesting

10   eight additional days to file their response and a new deadline of December 3, 2025. ECF No. 6,

11   The Motion stated that Petitioner opposed such an extension. Id.

12         As of this Order, over two weeks have passed since the Court's deadline to show cause,

13   and a full week has passed since Respondents' own requested, extended deadline, yet Respondents

14   have still failed to file any Return to the Petition. The Supreme Court has emphasized that habeas

15   corpus proceedings, and the federal habeas statute, are intended to provide petitioners with "swift,

16   flexible, and summary determination[s]." Preiser v. Rodriguez, 411 U.S. 475, 495 (1973) (citing

17   28 U.S.C. § 2243). While a respondent's failure to respond to a habeas petitioner's claims does

18   not entitle that petitioner to default judgment, it is within the district court's discretion to enter a

19   default judgment for petitioner in instances where respondent's failure to respond creates an

20   excessive delay in proceedings. Gordon v. Duran, 895 F.2d 610, 612 (9th Cir. 1990) (citing to Ruiz

21   v. Cady, 660 F.2d 337, 341 (7th Cir. 1981), for the proposition that district courts have discretion

22   to enter default judgment upon a government's failure to respond creating excessive delay).

23   Further, where a respondent is guilty of long, inadequately explained delays, courts may presume

24   that a petitioner is being detained illegally. See Ruiz, 660 F.2d at 340-41.

25         While there is a strong preference for habeas cases to be resolved on the merits, the Court

26   cannot allow further delay given the liberty and due process interests at stake. The Court also notes

27   that Respondents have appeared in many similar cases in this court and raised certain arguments

28   repeatedly before this Court. For these reasons, the Court rules on the Petition and grants relief

1    without a response from the federal Respondents, addressing the routine arguments that

2    Respondents have raised in scores of cases before this Court.[4]

3    **A. Jurisdiction**

4    The Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his

5    detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do

6    not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, 2:25-

7    cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (Nov. 19, 2025). In evaluating the jurisdiction

8    stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities

9    in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong

10   presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir.

11   2018) (*per curiam*) (internal quotations and citations omitted).

12   **B. Administrative Exhaustion**

13   The Court fully incorporates by reference its prior finding that administrative exhaustion

14   is excused as futile due to the BIA's decision in Hurtado. Jacobo Ramirez v. Noem, No 2:25-cv-

15   02136-RFB-MDC, 2025 WL 3270137, at *5-6 (D. Nev. Nov. 24, 2025).

16   **C. Statutory Question**

17   Petitioner Mejia Soto challenges the government's new interpretation of the INA, and his

18   detention thereunder, as unlawful. Petitioner argues this interpretation of the statutory scheme of

19   §§ 1225 and 1226 is flawed, contradicting both the statutory framework and the decades of agency

20   practice applying § 1226(a) to people like Petitioner. This Court agrees with Petitioner and fully

21   incorporates by reference its holding and findings in Escobar Salgado v. Mattos. 2025 WL

22   3205356, at *10-22.

23   Petitioner is a longtime U.S. resident, who entered the country without inspection decades

24   ago, and who was arrested and detained by ICE in Las Vegas, far from any port of entry.

25   Accordingly, the Court finds Petitioner is subject to detention under § 1226(a) and its

26   implementing regulations, not § 1225(b)(2)(A), and that the government's new interpretation and

27

28   _____

   [4] See, e.g., Escobar Salgado, 2025 WL 3205356; Duran, 2025 WL 3237451; Jacobo Ramirez, 2025 WL 3270137.

1   policy under that provision is unlawful. Escobar Salgado, 2025 WL 3205356, at \*10-22.

2        **D. Due Process**

3        Petitioner also challenges his ongoing detention without the opportunity for release on

4   bond under § 1225(b)(2) as unconstitutional under the Due Process Clause of the Fifth

5   Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it

6   would still have to contend with Petitioner's due process challenge on this basis. This Court

7   incorporates by reference the legal authorities and standards set forth in Escobar Salgado v. Mattos

8   regarding the due process rights of noncitizens. 2025 WL 3205356, at \*22-24. For the following

9   reasons, the Court finds that Petitioner is currently being detained without the opportunity for

10  release on bond in violation of his procedural and substantive due process rights.

11               1.  Procedural Due Process

12       To determine whether detention violates procedural due process, courts apply the three-

13  part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland,

14  53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar

15  immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can

16  and must account for the heightened governmental interest in the immigration detention context").

17       Under Mathews, the courts weigh the following three factors: (1) "the private interest that

18  will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest

19  through the procedures used, and the probable value, if any, of additional or substitute procedural

20  safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and

21  administrative burdens that the additional or substitute procedural requirement would entail."

22  Mathews, 424 U.S. at 335.

23       The first Mathews factor considers the private interest affected by the government's

24  ongoing detention of Petitioner without the opportunity for release on bond. See Mathews, 424

25  U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental

26  of liberty interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is

27  the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also

28  Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged

1    detention is unquestionably substantial.") (citations omitted).

2          Additionally, Petitioner's liberty interest is not diminished by any final order of removal,

3    or the availability of any existing process to challenge Respondents' decision to detain him without

4    bond. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact

5    that he was subject to a final order of removal, had already been afforded an individualized bond

6    hearing, and had additional process available to him through a further bonding hearing before an

7    IJ upon a showing of materially changed circumstances).

8          Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest

9    through the procedures used, and the probable value, if any, of additional procedures." Mathews,

10   424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his

11   detention pending the conclusion of his removal proceedings without the opportunity for release

12   on bond. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency

13   officials have sole, unguided, and unreviewable discretion to detain Petitioner without any

14   individualized showing of why his detention is warranted, nor any process for Petitioner to

15   challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this

16   lack of process is demonstrated by numerous prior cases before this Court where an IJ held a bond

17   hearing for a petitioner prior to Hurtado and found that the government had not established a

18   justification for detention. See, e.g., Escobar Salgado, 2025 WL 3205356; Aparicio v. Noem, No.

19   2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Berto Mendez v. Noem,

20   No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025). Moreover, given that

21   Petitioner Mejia Soto has significant familial and financial ties in the country, after over thirty

22   years of residency in Las Vegas, and Respondents have not asserted he is dangerous or a flight

23   risk, the Court finds that he is being arbitrarily and unjustifiably deprived of his liberty.

24          The additional procedures afforded under § 1226(a), including an individualized custody

25   redetermination by an immigration judge, i.e., a bond hearing, substantially mitigate the risk of

26   erroneous deprivation of Petitioner's liberty, because those procedures require the government to

27   establish that Petitioner presents a flight risk or danger to the community. This would account for

28   the constitutional requirement that "once the flight risk justification evaporates, the only special

1    circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's

2    dangerousness." <u>Zadvydas</u>, 553 U.S. at 691-92. An adverse decision by an immigration judge in a

3    bond hearing can further be appealed, and Petitioner could seek additional custody

4    redeterminations based on changed circumstances, such that the outcome of a bond hearing would

5    be subject to "numerous levels of review, each offering [Petitioner] the opportunity to be heard by

6    a neutral decisionmaker." <u>Rodriguez Diaz</u>, 53 F.4th at 1210 (finding the bond hearing procedures

7    available through the implementing regulations of § 1226(a) would render "the risk of erroneous

8    deprivation . . . relatively small.") (citation omitted). As such, the second <u>Mathews</u> factor also

9    weighs heavily in favor of granting Petitioner the procedural protections under § 1226(a).

10         The third and final <u>Mathews</u> factor considers the "Government's interest, including the

11    function involved and the fiscal and administrative burdens that the additional or substitute

12    procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the

13    government's interests in enforcing immigration laws, including "protecting the public from

14    dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest

15    order." <u>Rodriguez Diaz</u>, 53 F.4th at 1188-89. These interests are in fact served by the

16    individualized determination by an immigration judge, based on a review of evidence presented

17    by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing

18    removal proceedings, under existing, well-established procedures. In failing to articulate any

19    individualized reason why detaining Petitioner is necessary to enforce immigration law, the

20    question arises "whether the detention is not to facilitate deportation, or to protect against risk of

21    flight or dangerousness, but to incarcerate for other reasons." <u>Demore</u>, 538 U.S. at 532-33

22    (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a

23    person's liberty.

24         Further, the Court finds that limiting the use of detention to only those noncitizens who are

25    dangerous or a flight risk through existing bond procedures serves the government and public's

26    interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention.

27    <u>Hernandez v. Sessions</u>, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the

28    public of immigration detention are staggering: $158 each day per detainee, amounting to a total

1    daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17

2    cents and 17 dollars each day per person.”).

3        In sum, the Court finds the <u>Mathews</u> factors weigh heavily in factor of Petitioner, and

4    therefore, his detention without the opportunity for release on bond violates his procedural due

5    process rights.

6                    2.    <u>Substantive Due Process</u>

7        Immigration detention violates the Due Process Clause unless it is ordered in a criminal

8    proceeding with adequate procedural protections, or in non-punitive circumstances “where a

9    special justification . . . outweighs the individual's constitutionally protected interest in avoiding

10   physical restraint.” <u>Zadvydas</u>, 533 U.S. at 690.

11       Respondents have asserted absolutely no individualized justification—let alone a special

12   or compelling justification—to continue to deprive Petitioner of his physical liberty.  Accordingly,

13   in addition to finding that the challenged regulation violates procedural due process, this Court

14   further finds that Petitioner is currently detained in violation of his substantive due process rights.

15   See <u>Escobar Salgado</u>, 2025 WL 3205356, at *25.

16       **E.  Scope of Relief**

17       The federal habeas corpus statute “does not limit the relief that may be granted to discharge

18   of the applicant from physical custody.” <u>Carafas v. LaVallee</u>, 391 U.S. 234, 238 (1968). “Its

19   mandate is broad with respect to the relief that may be granted.” <u>Id.</u> “It provides that ‘[t]he court

20   shall . . . dispose of the matter as law and justice require.’” <u>Id.</u> (quoting 28 U.S.C. § 2243).

21       Here, Petitioner faces the specific harm of being detained for months without a bond

22   hearing pursuant to § 1226(a). The Court finds that harm is remedied by ordering a bond hearing

23   by **December 16, 2025**. Given the due process rights at stake, if a bond hearing is not provided

24   promptly within that time frame, Petitioner shall be immediately released until it is determined

25   that his detention is warranted under 8 U.S.C. § 1226(a).

26       **F.  Attorneys' Fees**

27       The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioner's

28   counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act

1   (EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

2

3   **VI.    CONCLUSION**

4          Based on the foregoing **IT IS HEREBY ORDERED** that the Petition (ECF No. 1) is

5   **GRANTED**.

6          **IT IS FURTHER ORDERED** that Respondents must provide Petitioner with a bond

7   hearing pursuant to 8 U.S.C. § 1226(a) no later than **December 16, 2025**.

8          **IT IS FURTHER ORDERED** that Respondents are enjoined from denying Petitioner

9   release on bond on the basis that he is subject to mandatory detention pursuant to 8 U.S.C. §

10  1225(b)(2). Thus, in the event that bond is granted, the Court **ORDERS** that Respondents are

11  enjoined from invoking the automatic stay to continue Petitioners' detention, as the Court has

12  already found the automatic stay unconstitutional and adopts that finding here. Herrera v. Knight,

13  No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792, at *13 (D. Nev. Sept. 5, 2025).

14         In the event that bond is granted, Respondents are **ORDERED** to immediately release

15  Petitioner. The Court has received notice of the hardship other petitioners have incurred in their

16  efforts to satisfy bond, and therefore, the Court **FURTHER ORDERS** that Petitioner be afforded

17  45 days from the date of release to satisfy any monetary bond conditions.

18         **IT IS FURTHER ORDERED** that if the individualized bond hearing is not conducted by

19  **December 16, 2025**, Petitioner shall be immediately released until it is determined that his

20  detention is warranted under 8 U.S.C. § 1226(a).

21         **IT IS FURTHER ORDERED** that the parties shall file a status report on the status of

22  Petitioner's bond hearing by **December 17, 2025**. The status report shall detail if and when the

23  bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

24         **IT IS FURTHER ORDERED** that Respondents' Motion to Extend Time (ECF No. 6) is

25  **DENIED** as moot.

26     ///

27     ///

28     ///

1          **IT IS FURTHER ORDERED** that Petitioner's Motion for Summary Judgment (ECF No.

2     10) is **DENIED** as moot.

3

4          **DATED:** December 11, 2025.

5

6                                                                    _____

7                                                                    **RICHARD F. BOULWARE, II**
                                                                     **UNITED STATES DISTRICT JUDGE**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28